Good morning, Illinois Appellate Court. First District Court is now in session. The Fourth Division, Justice Robert E. Gordon presiding. Case number 1-9-2-3-3-7, Handover Insurance Company versus MRC Polymer, Incorporated. Okay, would the lawyers who are going to argue the case please introduce themselves to the court? Good morning, Your Honor. My name is James Joseph on behalf of MRC Polymers, Incorporated. I'm also joined today by John George on behalf of Dean Eberhardt, but I'll be presenting for both appellants today. Good morning, Your Honor. Good morning, Your Honor. David Cutter for Plaintiff Appellee, the Handover Insurance Company. Okay, now, appellant, are you going to reserve some time for oral argument, I mean for rebuttal? Yes, Your Honor. I'd like to reserve five minutes. Okay, all right. Well, let's proceed. Thank you. May it please the court. It's a fundamental principle of insurance law that insurer has a duty to defend and insure, provided that the facts and allegations are within or potentially within policy coverage, even if the allegations are groundless, false, or fraudulent. This is an extremely capacious standard. It means any possibility or potentiality of coverage at all, and it means that you strictly construe all exclusions against the insurer. The judgment below should be reversed because the circuit court misapplied this principle in two important ways. First, even without reference to extrinsic facts, the circuit court favored those allegations triggering the exclusion instead of those showing that the exclusion doesn't apply. Second, even though the case came before the circuit court on cross motions for summary judgment, it refused even to acknowledge, let alone to consider, our affirmative evidence showing the exclusion doesn't apply. In particular, the declaration from MRC Polymers CEO that MRC Polymers never owned or developed the PET wash line technology at issue in the underlying suits. Let me turn first to the allegations. Hanover doesn't dispute that there are underlying allegations that someone other than MRC Polymers offered, et cetera, the wash line technology. Essentially, its only argument, which the circuit court accepted, is that as long as the claim, meaning the entire lawsuit, involves any allegations of a wrongful act by MRC Polymers in connection with the technology, the exclusion applies. That misreads the plain language of the exclusion. The exclusion doesn't apply to all claims for a wrongful act by the insured entity in connection with any products or technologies whatsoever, but rather technology specifically offered, promised, delivered, et cetera, by the insured entity. So the relationship between the insured entity and the products or technologies is critical to the application of the exclusion. In addition, the exclusion doesn't apply to claims. It applies to a loss for a claim. So putting this all together, the critical question under the exclusion is whether MRC Polymers could incur a loss for any claim that is either not a wrongful act, meaning a wrongful act by the insured entity, MRC Polymers, or a wrongful act by reason of or in connection with the efficacy and performance of technologies that were not offered, et cetera, by MRC Polymers Incorporated. And the answer to that is absolutely yes. There are three ways at least. In the underlying allegations, the plaintiffs asserted alter ego liability, aiding and abetting liability, and of course, there's the issue of defense expenses. Let me take those in turn. Counts one and two of the underlying second amended complaint allege fraud against all of the defendants, including MRC Polymers, but with respect to MRC Polymers participation, and also alter ego. Alter ego is a theory of vicarious liability. Vicarious liability means that you are liable for the acts of others. Your liability is not premised on your own conduct. Therefore, it's not a wrongful act within the definition of the exclusion. Similarly, with respect to the aiding and abetting, that's count five of the second claim that's entirely premised on the theory that the technology that was offered, promised, delivered, et cetera, by the insured entity was MRH's. Now, it may be a wrongful act because the aiding and abetting is something that MRC Polymers is accused of doing, but it's not a wrongful act in connection with technology offered by the insured entity. And third, of course, there are defense expenses. If MRH is found liable in the underlying action and found to have offered, delivered, et cetera, the technology, and MRC Polymers is not, then MRC Polymers will have incurred defense expenses, which is a covered loss. So this case falls squarely within that jurisprudence, suggesting that where the complaint includes multiple theories of liability and alternative inconsistent factual allegations, coverage exists, even if only one of those theories or one set of those facts puts the case potentially within coverage. So Hanover, in its briefing here, only relied on cases where the identity of the named insured was not in question or where there weren't alternative theories of liability. But this case falls within those classic examples of mixed theories of liability, such as those involving both negligence and strict liability claims. Now, I want to take this opportunity to drill down on the inconsistency in the facts a If there's one piece of evidence, record evidence, that I'd like the court to take a look at after these arguments, it's over. It's the Asset Contribution and Sale Agreement, also known as the ACSA. The ACSA is Exhibit A to the second amended complaint in the underlying law division suit. And there are a couple of pieces or there are a couple of pages in that exhibit that, in particular, I'd like to direct the court's attention to. The first is the cover page, which is on page appendix 420, A420. And what that shows is who the parties to the underlying transaction were, and they don't include MRC polymers. They show that there are two sets of sellers, the MRH entities, and two sets of buyers, the PRP parties. And MRH is selling or contributing assets to PRP, which is considered the company under the agreement. So then if you skip ahead to section 1.1a on page A428, you'll see that it describes the basic transaction. And the basic transaction is one in which MRH conveys what are called contributed assets. That's a defined term, including all intellectual property. That's also a defined term. And this is repeated in Exhibit A to the ACSA, which is on page A453, and it shows that the intellectual property is the primary contributed asset in this deal. So then the question is, what's the intellectual property? And for that, you look at section 2.7 of the agreement on page A474. I'm sorry, section 2.7 on page 428. And that says that schedule 2.7, which is the schedule that corresponds to the section, lists all of the intellectual property that are contributed assets. So then you have to follow over to the schedule, and that's on page A474. And what does this schedule 2.7 say? It is the list of all the intellectual property and technology that's transferred from the MRH parties to the PRP parties. And it lists six trade secrets. The first five of those trade secrets are defined as trade secrets, quote, developed by MRH, close quote. The sixth of those trade secrets is defined as trade secrets originating in Green Innovative Technologies, LLC, purchased by MRH, close quote. So what that demonstrates, what this entire $30 million deal was principally about, was technology developed by MRH and transferred, in other words, offered, promised, sold, delivered, to the PRP parties. That demonstrates a factual inconsistency with the allegations in the complaint. Now, importantly, that contract is not extrinsic evidence. It's part of the complaint. It was appended to the complaint, and it controls over the contrary false, groundless allegations in the complaint. So let me now turn to the question of extrinsic evidence. Hanover really hangs its entire position on the argument that the only allegations, I'm sorry, that only the eight corners rule may be applied, and only the allegations matter. The facts don't actually matter. But if they're wrong about that, and we suggest they are, then the rest of their case falls away, because they don't really dispute the long line of our briefs, demonstrating that on a motion for a summary judgment, as opposed to a motion for judgment on the pleadings or a motion to dismiss, the circuit court may consider extrinsic evidence, provided it doesn't have any tendency to determine facts in the underlying litigation. The standard Hanover suggests of this sort of ad hoc case-by-case consideration of evidence is just plainly wrong. It's inconsistent with that. But even under Hanover's own standard, they admit that all of the kinds of evidence that we submitted are kinds that the court consider. They include a contract, such as in Envirodyne Engineers, and such as the contract I just read to you from, an undisputed affidavit, as in Miller's Mutual, true but unpleaded facts that arise from the insurer's own investigation, and underlying pleadings, like the third-party complaints in Holabird & Root and AAA1 Masonry. Now, that's almost the entire universe of evidence that we did submit, and the circuit court didn't consider it. The only additional kind of evidence we submitted were affidavits from the underlying litigation, suggesting that to the extent any representations were made about efficacy or performance, they related to assets that were offered, promised, delivered, etc., by the MRH parties and not by MRC polymers. The other thing is that Hanover doesn't actually contest the facts that we suggested. It says, we don't know, we need further discovery, but in the posture that it came before the court, our CEO's declaration that MRC polymers never owned or developed the technology was the undisputed affidavit at issue. So, the guiding case here is Miller's Mutual, which is squarely on point for the proposition that the court can consider extrinsic evidence to determine whether the underlying plaintiff has sued the wrong person. There, the court considered the affidavit of the named insured, who averred that the machinery at issue in the underlying suit was not the property or was not owned by the named insured, and exactly the same kind of affidavit was submitted here. Circuit court refused to consider it, and doing so was error. I'm happy to invite the court's questions, otherwise I'd like to reserve the remainder of my time for rebuttal. I have one question that I'm interested in, and that's this, what is your best case to support your theory that when the allegations allege wrongful acts that there still can be coverage? Do you have a case that supports that? Allege that wrongful acts can still support coverage? Right, when there's allegations of wrongful acts. Well, I think there are a number of them. I think, frankly, any case that involves both a strict, or I'm sorry, any case that involves a negligence policy in which there were also allegations of intentional conduct, is the kind of, and there are a lot of those, is the kind of case in which coverage must apply. So, one of the landmark cases in that respect is Pepper's, Maryland Casualty Insurance versus Pepper's. That involved both strict liability and negligence claims. But even as recently as this court's decision in People versus A111 Masonry, there, so in that case, this is like a lot of cases in which an injured plaintiff sues a general contractor who's an additional insured on a subcontractor's policy. And in that case, the policy indicated that the only kind of liability that would be covered would be the general contractor's vicarious liability, not the general contractor's own negligence. Well, in there, a third, as is typical in these cases, the plaintiff didn't actually sue the subcontractor, it sued the general contractor. And there, the court was, and I should say also that the exclusion in the additional insurance policy was for claimed negligence. That was the term, which is essentially the same as alleged negligence. And nevertheless, this court considered both the underlying pleadings and the third-party complaint and a claims note in that case to determine that there was a possibility of negligence. Let me stop you for a minute. Is there anything in your case that shows allegations of negligence or even a finding of negligence? Well, negligence isn't the issue here. Well, I understand that. And you're talking about negligence. It's not an issue in this case. No, I understand that. The question is whether the exclusion applies to only one particular kind of conduct. So this is a little bit different in that respect, because here, the wrongful act has to be tied as a factual matter to a technology that is offered, promised, et cetera, by the insured entity. Do you have a case that says that? Well, I don't think there's any exclusion like that out there. I haven't been able to find a ambiguity about it. This court should construe it very much like it construed essentially the same policy in Evergreen Property Management Services versus Hanover Insurance. This is that kind of case, where there are parallels between the excluded conduct and the included conduct. You construe that policy against the insurer. Any questions by Justice Lampkin? No, thank you. Any by Justice Burke? No, thank you. All right. Well, let's hear from Mr. George. Mr. Cutler. Thank you, Your Honors. I think Mr. George, Mr. Joseph was doing the argument for Mr. Okay. Thank you. May it please the court, and good morning. As you heard, my name is David Cutler, and I represent Plaintiff Appley, the Hanover Insurance Company. You might not have gathered this from Mr. Joseph's presentation, but this is, in fact, a simple duty to defend case. In this instance, the question is not whether there are mixed allegations, some of which trigger coverage to begin with, others of which do not, but this is a question about the application of an exclusion. And when evaluating whether an exclusion bars a duty to defend, the court examines the unambiguous policy language and compares it to the allegations of the underlying complaints to determine if the allegations, if true, would bar coverage. Here, the unambiguous language of the products and services liability exclusion provides that it applies, and I'm going to paraphrase to focus on the most relevant language, to loss for any claim based upon arising out of in any way related to an actual or alleged claim for wrongful act by reason of or in connection with the efficacy or performance or proprietary licensing rights for any services, products, or technologies offered, promised, delivered, produced, processed, sold, marketed, distributed, advertised, and or developed by the insured entity. And I appreciate the court's patience as I recited the language, but I think the language of the exclusion here is critical. Here, the insurance can see that there are numerous allegations against them that trigger the exclusion. Those facts include that MRC and Mr. Eberhardt on behalf of MRC misrepresented the efficacy and performance of the wash line technology to induce the claimants to enter into the transaction. If those facts are true, the loss would arise from the excluded conduct and there is no coverage. As a result, as the circuit court correctly found, as a matter of law, Hanover has no duty to defend. Now, in an effort to avoid this result, insureds attempt to muddle the inquiry a bit by claiming that the fact that the exclusion is limited to certain conduct by the insured entity eliminates application of exclusion here. Insureds argue that this clause is critical for two big picture reasons. First, they argue that because the underlying complaints of allegations that a potentially uninsured entity, MRH, developed and owned the technology, there are allegations not within the scope of the exclusion and Hanover has a duty to defend. Second, insureds argue that they should be permitted to submit evidence in the coverage action to demonstrate that the wash line technology was owned by MRH and not by MRC. But a review of the insured's argument in the context of both the allegations of the underlying complaints and the unambiguous policy language demonstrates that they are without merit for three overarching reasons. First, we believe it is critical for the court to consider the focus to support their arguments in the proper context. Now, if I could pick particular documents to request that the court examine after this hearing, it would be to look at the allegations of the underlying complaint. The insureds focus really on only three specific allegations that are more narrowly focused on other entities' involvement in allegedly developing or selling the product, but those three allegations do not undermine the dozens of allegations about MRC's conduct in connection with the development and sale of the technology, and it is those allegations that trigger application of the exclusion. The insureds also focus on the fact that a number of the allegations, a number but not all, there are certainly numerous standalone allegations against MRC and Mr. Eberhardt in connection with the product that triggers the exclusion, but the insureds focus on certain allegations that blend together the conduct of MRC and the conduct of MRH and also the conduct of Mr. Eberhardt, who's the individual insured, in his role as an officer of both MRC and MRH. But the court should focus on the fact that there is no coverage here for any conduct of MRH, since it is not an insured entity, nor is there any coverage for the conduct of Mr. Eberhardt in his role for MRH, because the policy only provides coverage for his conduct in his capacity acting for MRC. So, all of the allegedly alternative allegations on which the insureds focus, that they say take this case outside the scope of the exclusion, actually take this case outside the scope of coverage. So, if the court favored all of those allegations, there would be no threshold duty to defend to begin with. But for purposes of the duty to defend, because there were both for determining whether the duty to defend is implicated, because there were both sets of allocations, there is a duty to defend. But the remaining dozens of allegations against MRC and Mr. Eberhardt acting for MRC are all within the scope of the exclusion and result in the conclusion that there is no duty to defend. And this is no different if we're talking about alter ego or aiding or abetting liability. These are all different ways of finding that MRC is responsible for inducing the claimants into purchasing what they believed was faulty materials and information, a faulty product. Now, in his opening argument, Mr. Joseph directed the court to one of the agreements involved in this transaction. But we know that there are three agreements. The other two agreements, which involved leases and sale of the equipment necessary to run the wash line technology, are all with MRC. So there can be no doubt here that there are sufficient allegations to trigger the application of the exclusion. Now, the question here, secondly, is what should the court do because of the existence of a few allegations that, according to the insurance, take this case out of the reach of the exclusion. And in that regard, it is critical for the court to look at the language of the exclusion. And this exclusion has a broad prefatory language based upon arising out of in any way related to any actual or alleged claim for a wrongful act. Now, Illinois courts are uniform in holding that between the excluded conduct and the underlying claim, or at the very least, so long as there is but-for causation. The insurance do not argue here that there is a lack of but-for causation, and that test is easily satisfied here. And this test does not apply any differently in the context of the fact that there may be some factual allegations that take this case outside the reach of an exclusion. Now, in our brief, we cited a number of cases for that proposition, but the insureds argue that those cases are of no moment because they do not deal with the issue on which the insureds focus the identity of the actor. But insureds do not explain why this is a distinction with a difference. The point of these cases is that an exclusion applies when the excluded conduct is the but-for cause of the loss. And other allegations will not preclude application of an exclusion unless they are wholly independent from the excluded conduct and can reasonably said to be the but-for cause of their own covered cause of loss. This rule has been applied by the court even in the context of when there was a question about the entity for whom the insured was acting. We cited the American Zurich versus Wilcox case, Wilcox case, excuse me, which involved a business pursuits exclusion that excluded from coverage any claim based upon or arising out of, in whole or in part, the alleged acts or omissions by any insured for any business enterprise in which any insured had a controlling interest. Now, the insured there, like the insured here, argued that the exclusion didn't apply because he was acting both for an insured entity, both for an entity in which he had a controlling interest, but also acting for an entity in which he did not. And the court said that didn't matter because the exclusion applied because the predicate for applying the exclusion was found. Here, because the but-for test is easily satisfied, this long line of cases holds that coverage is barred notwithstanding the presence of a few allegations that may involve someone else's involvement with the product. Now, third, the insured contend that because they dispute whether they owned or developed the technology, exclusion should not apply or they should be permitted to offer evidence to dispute the fact in the coverage action. This argument is inconsistent, however, with the language of the products and services liability exclusion, which applies based upon any actual or alleged claim for a wrongful act. Now, the insured argued that the additional language of an alleged claim for a wrongful doesn't change the analysis at all, citing basic principles of Illinois law that coverage should not depend upon the whim of the drafter of the underlying complaint. But this is the language that the insured contracted for. Until today, the insured had not argued the language was ambiguous in any way, and this was language that was added to the policy by endorsement as a standalone exclusion. To hold that this case doesn't rely upon the underlying allegations would read this language out of the policy in violation of basic principles of insurance coverage interpretation. In addition, the insured argued that they should be permitted to offer evidence to demonstrate that they did not own or develop the technology. However, as I just mentioned, this evidence is irrelevant because the product and services liability exclusion is triggered by the allegations, and that's what the circuit court correctly found. And even if the insured successfully demonstrated that they didn't own or develop the technology, there are still a host of other allegations about their sale of the technology, about their marketing of the technology, about their advertising the technology that would trigger the exclusion in any event. Despite this indisputable fact, the insured posit that because they filed for summary judgment, they should automatically be allowed to put forward this evidence in support of their argument that the exclusion does not apply. But the case law doesn't support the approach. The insured criticize Hanover for not providing a cogent theory for when fact-intensive inquiry. The court needs to examine the language of the policy, the underlying allegations, and the evidence being offered to determine whether the extrinsic evidence is necessary. Here, the extrinsic evidence is not necessary because of the plain language of the exclusion that relies upon the allegations and because all of the allegations in the underlying complaint that implicate the exclusion. Given the specific facts of this claim, including the unambiguous policy language and the underlying allegations, resolution of this dispute based on anything other than the pleadings is unnecessary and unwarranted. Now, in conclusion, I would note that this case is like no other duty to defend coverage action. Its determination depends upon the construction of the insurance policy and an examination of the allegations of the underlying complaint. But insurers want to divorce this case from that exercise and instead focus on inopposite examples, generic principles of duty to defend law that don't involve construction of exclusions or allegations like the ones here, and the parsing of a few of the underlying allegations that they believe take this case out of the reach of the exclusion, but also, ironically, would take the case out of the reach of coverage to begin with. The lengths to which the insurers will go to help advance their narrative that the underlying dispute was not about conduct within the scope of the exclusion is revealed in the last page of the last brief filed on this case before this court, where the insurers assert that MRC was a mere bystander to the subject of the suit. A review of the actual allegations, however, reveals that the opposite is true. There are extensive allegations directed at MRC and Mr. Eberhardt about their role in offering, promising, delivering, selling, and marketing the technology and the equipment and leases that were necessary to operate the technology that is at the heart of this dispute. The insurers were not mere bystanders to these allegations, and the existence of the allegations means that the language for which the insurers contracted, which is based upon the allegations, bars coverage. Hanover respectfully requests that the court affirm the circuit court's entry of summary judgment in Hanover's favor based upon the products and services liability exclusion. With that, I would welcome any questions that the court may have. Yeah, are there any questions by Justice Lampkin? No, I don't have a question. I do have a comment. I don't know who wrote this exclusion, but I have not seen one that is so sweeping. Good observation. Justice Burke, do you have any questions? No questions, thank you. Okay, let's hear the rebuttal. Your Honors, I'd like to say, and maybe this will address, well, let me begin with the with counsel's first point, which is that the overwhelming majority of allegations in the underlying complaint suggest that MRC Polymers was responsible for the technology issue. That, however, is flatly against the case law, which permits that any potentiality whatsoever that the exclusion doesn't apply should govern even if the potential is extremely unlikely. That's from the Lexington Station case. As another case, Pekin Insurance Company versus Hallmark Homes put it, the test is not whether the complaint directly alleges facts that show claim is within the coverage provided the policy, but rather that a duty to defend arises unless the insurance cannot possibly cover the liability arising from the facts alleged and the terms of the policy clearly preclude coverage under all of the facts consistent with the allegations. So, the fact that there may be- So, let me ask you this. So, what is the potential that could occur that would put it into coverage? Well, as I described in my opening remarks, Your Honor, there are a couple. Remember, what's covered here is not the claim, but the loss. And the question is, can MRC Polymers incur a loss that is not by reason of its own wrongful act? A wrongful act under the policy is defined as an act committed by the named insured. So, as I described, there's an alter ego claim in the underlying action. That's by definition, not an act of the named insured. So, that would fall outside the coverage. Also, it could be determined in the underlying action that the MRH parties were the ones who offered, promised, delivered, et cetera, the wash line technology. And perhaps MRC Polymers may or may not have aided and abetted them, but that doesn't mean that it was technology that was offered, et cetera, by MRC Polymers. Now, counsel also suggests that the allegations here would never bring the matter into coverage in the first place and that there would never be a threshold to defend. That's also not true. MRC Polymers was a passive landlord of a facility and equipment. And it's certainly plausible. It's certainly a potentiality that it had nothing to do with the technology that was offered to the PRP parties, but that its leases would be rescinded as a consequence of the fraudulent acts of others. This is a fairly standard case in fraudulent conveyance actions. A conveys to B fraudulently and B conveys to a good faith taker in C. And that kind of situation can happen here too. MRC Polymers entered into these leases in good faith and notwithstanding some alleged fraud by other parties, it could have its leases rescinded notwithstanding that it engaged in no wrongful act connected to that technology. The counsel also mentions that there are other agreements at issue in this suit, but those leases are exactly the kind that we described. Essentially the leases of a passive actor. And also one of the other agreements that's at issue is it's true MRC Polymers did sell some things to the PRP parties in its own asset sale agreement. But as we described in page C2103 of the record, that was for a de minimis amount. It was a 2007 Chevy and some equipment that costs less than $75,000. It has nothing to do with what the underlying allegations in this suit are about. Compare that de minimis sale of some leftover property to the $30 million for the intellectual property that's really at the issue at issue in the underlying suits. Now counsel also mentions the Wilcox and Christopoulos case. We think that case actually helps us because what it demonstrates is that the named insured, who the named insured is, is critical to the application of the policy. So if the acts are not committed by the named insured or if the excluded conduct is specifically tied to the named insured, then the exclusion shouldn't apply. So I'd like to address Justice Lampkin's point. Your honor indicated that you hadn't seen a broader exclusion. Here's a broader exclusion. It would have said we won't cover any claim that involves products or technologies, period. The question raised by this case is why did Hanover, which begs us to add to read the plain language of the policy, why did Hanover add those last four words to the exclusion? The last four words are by the insured entity. So it has to be products or technologies that were offered, et cetera, by the insured entity. This is Hanover's own policy and if they had intended to cover any kind of allegations whatsoever arising from technologies in which MRC polymers committed a wrongful act, they wouldn't have added those last four words because the wrongful act has to be in connection with the performance of a technology that is actually offered by MRC polymers. There are allegations and extrinsic facts to demonstrate that that didn't happen here and we should be entitled to demonstrate that. I would be happy to invite further questions, otherwise we would request that the court reverse the judgment below. Are there any further questions? No, thank you. Okay, well thank you very much for giving us an interesting case and we'll have an order or an opinion to you very shortly and the court is now adjourned.